COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-038-CV
 
 
 
ARTHUR 
LEE MORITZ                                                            APPELLANT
 
V.
  
GENERAL 
ELECTRIC COMPANY, CB                                         APPELLEES
RICHARD 
ELLIS, INC., TARRANT
COUNTY 
LIMITED PARTNERSHIP,
AND 
REGAL BUSINESS CENTER, INC.
 
  
------------
 
FROM 
THE 48TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Arthur 
Lee Moritz (Moritz) filed this suit against General Electric Company (GE), CB 
Richard Ellis, Inc. (Ellis), Tarrant County Limited Partnership (TCLP), and 
Regal Business Center, Inc. (Regal) (collectively Appellees) for injuries he 
suffered when he fell from an elevated loading ramp. TCLP, Ellis, and Regal 
filed a joint motion for summary judgment on all of Moritz’s claims against 
them, which the trial court granted.  GE then filed its own motion for 
summary judgment, which the trial court also granted.  In two issues, 
Moritz now appeals.  Because we hold that the trial court erred by 
concluding that no genuine issues of material fact exist regarding whether 
Moritz’s claim against TCLP, Ellis, and GE could only be a negligent activity 
claim, TCLP and Ellis retained control of the ramp, and GE’s acts or omissions 
were a proximate cause of the accident, and because the trial court erred in 
determining as a matter of law that Moritz was required to show that the danger 
was not open and obvious in order to proceed with his premises defect claim, we 
reverse and remand the trial court’s judgment.
I. Background 
Facts
        Moritz 
was a delivery driver for Jiffy Sam’s Trucking Co. “dedicated” to 
GE.  Everyday Moritz would go to the warehouse owned by TCLP, managed by 
Ellis, and leased by GE.  GE leased only one of many warehouses in the 
complex owned by TCLP.  When Moritz arrived at the warehouse each day, GE 
would give Moritz his sales tickets, and Moritz and/or GE would load his truck 
with electrical supplies to be delivered to GE’s customers.
        The 
warehouse had two loading dock doors.  A ramp accompanied one of the 
loading dock doors, allowing truck access into the warehouse.  The 
elevation of the ramp at door level was approximately four and a half feet. 
Although some of the other ramps at the warehouses in the complex had railings 
along their sides, the GE warehouse ramp did not have any rails.  GE’s 
and Moritz’s preferred loading and securing area was inside the 
warehouse.  If that location was not available, they preferred that he back 
his truck up to the door without the ramp. On some occasions, neither of these 
options was available.
        On 
the day of the incident, because GE had merchandise stacked in the preferred 
loading areas, Moritz’s truck was loaded and secured on the ramp. While Moritz 
was adding his final tie-down over the supplies in his truck, the bungee cord he 
was using broke, causing Moritz to fall backwards from the truck and off the 
ramp, breaking his pelvis, hip, and thumb.
        Moritz 
filed this suit against Appellees complaining, among other things, that if the 
loading ramp had been equipped with handrails, his serious injuries would have 
been prevented. TCLP, Ellis, and Regal filed a motion for summary judgment, 
alleging that Moritz’s claim could only be one for a negligent activity and 
not a premises defect, that they owed no duty to Moritz under a negligent 
activity claim, that Regal was not a proper party to this suit, that TCLP and 
Ellis did not control the ramp under a premises defect claim, and, 
alternatively, if they did, they nevertheless did not owe Moritz a duty because 
the danger was open and obvious.  At the hearing on the motion for summary 
judgment, Moritz nonsuited Regal.  The trial court granted summary judgment 
in a general order.
        GE 
then filed a motion for summary judgment, alleging that Moritz’s claim was a 
negligent activity claim and not a premises defect claim, that GE had no duty to 
Moritz under a negligent activity claim, that GE had no duty under a premises 
defect claim because the danger was open and obvious, and that GE did not 
proximately cause Moritz’s injuries because the accident was not foreseeable. 
The trial court also granted GE’s motion for summary judgment in a general 
order. Moritz, in two general issues, now challenges the trial court’s summary 
judgment.
II. Pleading 
Multiple Causes of Action Against Multiple Defendants
        In 
this case, Moritz specifically argues that the trial court erred by concluding 
as a matter of law that the occurrence arose from a negligent activity and not a 
premises defect. We agree. In both motions for summary judgment, Appellees 
argued that this is a negligent activity and not a premises defect case and that 
Moritz should be limited to proving only a negligent activity claim. After all 
the evidence has been presented at trial, a premises liability claim may turn 
out to be a premises defect case or a negligent activity case.[2]  
But a plaintiff is not required to restrict his pleadings or presentation of 
evidence at trial to only a premises defect claim or a negligent activity claim.[3]  Furthermore, in a multidefendant lawsuit, a 
plaintiff may often be able to offer, and is not restricted from offering, all 
the evidence required to prove liability under many different causes of action 
for each different defendant.[4]  As set forth 
below, issues of material fact exist regarding TCLP’s, Ellis’s, and GE’s 
liability under a premises defect theory and GE’s liability under a negligent 
activity theory.  Thus, the proportionate liability of TCLP, Ellis, and GE 
for premises liability is an issue for the jury after Moritz has put on all his 
evidence at trial.[5]
III. Premises 
Liability
        In 
Moritz’s two issues, he argues that the trial court erred by granting summary 
judgment because genuine issues of material fact exist regarding his premises 
liability claims.  Liability for injury on business premises may be found 
under a premises defect theory or a negligent activity theory.[6]  
There are two categories of premises defects for which an employee or an 
independent contractor may hold an owner or general contractor liable: (1) 
defects that exist on the premises when the independent contractor or its 
employee enters; and (2) a defect the independent contractor or its injured 
employee created by the work activity.[7]  A 
negligent activity is one that involves an injury by or as a contemporaneous 
result of the activity conducted on the premises rather than by a condition of 
the premises.[8]
        Appellees 
assert that this is a negligent activity case because Moritz would have never 
been injured if he had not leaned out over the edge of the ramp while he was 
securing his load. This argument fails because Moritz’s first amended petition 
alleges adequate facts for both a premises defect cause of action and a 
negligent activity cause of action against GE and a premises defect cause of 
action against TCLP and Ellis.  Therefore, the trial court erred to the 
extent that it held Moritz’s claim could only be a negligent activity claim.
A. Premises 
Defect Cause of Action
        Moritz 
argues that the trial court erred by concluding as a matter of law that the 
occurrence arose from a negligent activity and not a premises defect.  We 
agree.
        A 
premises defect claim requires an invitee to prove that: (1) a condition of the 
premises created an unreasonable risk of harm to the invitee; (2) the owner knew 
or reasonably should have known of the danger; (3) the owner failed to exercise 
ordinary care to protect the invitee from the danger, by both failing to 
adequately warn the invitee of the condition and failing to make that condition 
reasonably safe; and (4) the owner’s failure was a proximate cause of injury 
to the invitee.[9]
1. Right to 
Control/Duty
        In 
this case, Moritz specifically complains that the trial court erred by 
concluding as a matter of law that under the lease between TCLP and GE, TCLP did 
not retain control of the loading ramp as required to prove the duty owed under 
premises defect cause of action. We agree.
        To 
prove the existence of a duty under the first category of premises defect, a 
defect that exists on the premises when the invitee enters, in the 
landlord-tenant context, the invitee must establish that the landlord retained a 
right to control the injury-causing portion of the premises.[10]  
To prove the existence of a duty under the second category of premises defect, a 
defect the independent contractor or its injured employee created by the work 
activity, the injured party must establish the defendant’s right to control 
the defect-producing work.[11]  Therefore, the 
right to control establishes the existence of a duty and provides the legal 
basis upon which liability can be found.[12]
        The 
lease between TCLP and GE defines the leased “premises” as the outer walls 
of the warehouse inward. Furthermore, the lease provides the following:
9. 
Repairs and Maintenance:
 
(a) 
By Landlord: Landlord shall at its expense maintain only the roof, foundation, 
underground or otherwise concealed plumbing, and the structural soundness of the 
exterior walls (excluding all windows, window glass, plate glass, and all doors) 
of the Building in good repair and condition, except for reasonable wear and 
tear. Landlord shall not be responsible for termite eradication. Tenant shall 
give immediate written notice to Landlord of the need for repairs or corrections 
and Landlord shall proceed promptly to make such repairs or corrections. 
Landlord’s liability hereunder shall be limited to the cost of such repairs or 
corrections.
 
Landlord 
represents that at the beginning date of this Lease the plumbing and any fire 
protection sprinkler system, heating system, air-conditioning equipment, and 
elevators are in good operating condition. In addition, Landlord shall 
maintain the paving outside the Building, the landscaping and regular mowing 
of grass and any railroad siding.
 
. 
. . .
 
11. 
Common Areas: The use and occupation by Tenant of the leased premises shall 
include the use in common with others entitled thereto of the common areas, 
parking areas, service roads, loading facilities, sidewalks, and other 
facilities as may be designated from time to time by Landlord, subject, however, 
to the terms and conditions of this agreement and to reasonable rules and 
regulations for the use thereof as prescribed from time to time by Landlord.
 
All 
common areas described above shall at all times be subject to the exclusive 
control and management of Landlord, and Landlord shall have the right from 
time to time to establish, modify, and enforce reasonable rules and regulations 
with respect to all facilities and areas mentioned in this Article. Landlord 
shall have the right to construct, maintain, and operate lighting facilities on 
all said areas and improvements; to police the same; from time to time to change 
the area, level, location and arrangement of parking areas and other facilities 
hereinabove referred to; and to restrict parking by tenants, their officers, 
agents and employees to employee parking areas. (emphasis added)

        The 
lease unambiguously states that the Landlord will maintain the paving outside 
the building and that loading facilities are common areas for which the Landlord 
has exclusive control. Therefore, applying the appropriate standard of review,[13] because the record reflects that the ramp existed at the 
time GE leased the warehouse, and that the ramp is a paved ramp outside the 
building, we hold that issues of material fact exist regarding whether TCLP 
retained a right to control and maintain the ramp, and thus owed a duty to 
Moritz to use reasonable care to keep the premises in a reasonably safe 
condition.[14]
        Furthermore, 
issues of material fact exist regarding whether the ramp is a loading 
facility.  TCLP alleges that the ramp is not a loading facility, and that 
the ramp is only a means of ingress and egress into the warehouse.  
Deposition testimony from GE employees and Moritz state that delivery trucks 
were often loaded on the ramp.  Consequently, the trial court erred to the 
extent that it held as a matter of law that TCLP did not have the right to 
control the ramp.
2. 
“No-Duty”/ Open and Obvious
        Additionally, 
Moritz specifically complains that the trial court erred by concluding as a 
matter of law that the absence of rails on the loading ramp was an “open and 
obvious” defect alleviating any duty owed by TCLP, Ellis, or GE to 
Moritz.  We agree.
        Relying 
on dicta in Coastal Marine Serv. of Texas, Inc. v. Lawrence,[15] Appellees argued in their motions for summary judgment 
that Moritz had to prove that the dangerous condition was not open and obvious; 
however, that element has been abolished in premises defect claims.[16]  Whether the condition is open and obvious goes to 
the reasonableness of Moritz’s conduct under the circumstances, which is an 
issue to be considered by the jury in determining the proportionate 
responsibility of the parties.[17]  
Consequently, applying the proper standard of review,[18] 
we hold that the trial court erred to the extent that it held as a matter of law 
that Moritz had to show that the danger was not open and obvious to prove TCLP, 
Ellis, or GE owed a duty to him.
B. Negligent 
Activity Cause of Action
        Moritz 
also argues that the trial court erred by finding that no genuine issues of 
material fact exist regarding whether GE proximately caused Moritz’s 
injuries.  We agree.  In Moritz’s first amended petition, he alleges 
that GE is liable for his injuries because GE had a duty to exercise reasonable 
care in safely supervising his activities.  A negligent activity claim 
requires that the plaintiff prove that the defendant owed plaintiff a legal 
duty, the duty was breached, and damage was proximately caused by the breach.[19]
1. Right to 
Control
        Although 
the general rule is that a general contractor does not owe a duty to ensure that 
an independent contractor performs its work in a safe manner, a duty does arise 
if the general contractor had a right to control the activity.[20]  
Therefore, the right to control the activity establishes the existence of a duty 
and provides the legal basis on which liability can be found.[21]
        Right 
to control in this context means that “‘[t]here must be such a retention of 
a right of supervision that the [independent] contractor is not entirely free to 
do the work in his own way.’”[22]  Right to 
control can be retained in two ways: by contract or by actual exercise of 
control.[23]  Because the parties agree that no 
contract exists between Moritz and GE, we review the evidence to determine 
whether an issue of material fact exists regarding whether GE actually exercised 
control over Moritz’s activities on the premises.
        The 
record reflects that GE frequently regulated and directed where Moritz parked 
and loaded his truck. Additionally, GE frequently loaded or assisted Moritz in 
loading his truck.  Furthermore, the record reflects that Moritz was only 
in charge of actually backing the truck up to be loaded and picking up sales 
tickets; GE had a right to tell him how, when, and where the loading activities 
took place.  GE also had a right to tell Moritz when and where to deliver 
the merchandise.
        Although 
GE alleges that in determining whether issues of material fact exist regarding 
its right to control Moritz’s activities we should limit our consideration to 
its specific right to control how Moritz secured his load on the day of 
the incident, the proper review is whether issues of material fact exist 
regarding whether GE retained the right to control any aspect of Mortiz’s 
activities.[24]  Therefore, applying the proper 
standard of review,[25] we hold that issues of 
material fact exist regarding whether GE retained control of Moritz’s 
activities.
2. Proximate 
Cause
        Moritz 
also specifically argues that the trial court erred by finding that no genuine 
issues of material fact exist regarding whether GE could foresee injury arising 
from the activity.  We agree.
        Proximate 
cause consists of two elements, cause in fact and foreseeability.[26]  Cause in fact is an act or omission that is a 
substantial factor in bringing about the injury, without which the injury would 
not have occurred.[27]  An act is foreseeable if 
a person of average intelligence should have anticipated that a danger to others 
would be created by the act or omission; however the person does not have to 
anticipate the specific injury that occurred.[28]
        In 
this case, GE specifically stated that it was not foreseeable that Moritz’s 
bungee cord would break, “propelling him off of the ramp.”  The test, 
however, is not whether GE could foresee the specific manner in which the injury 
would occur.  GE only had to anticipate the danger of someone falling off 
the ramp when loading a truck or securing a load on the ramp with no 
rails.  The summary judgment evidence shows that GE preferred for Moritz to 
load his truck on a level surface.  The evidence also shows that GE was 
aware that the ramp did not have side rails that would prevent a person from 
falling off the side of the ramp.  Consequently, applying the proper 
standard of review,[29] because a person of average 
intelligence would have anticipated that a danger to others would be created by 
loading and/or securing a truck on a four-and-a-half-foot ramp with no rails, we 
hold that issues of material fact exist regarding whether GE proximately caused 
Moritz’s injuries.
IV. Conclusion
        Because 
we hold that the trial court erred by granting TCLP and Ellis’s motion for 
summary judgment and GE’s motion for summary judgment, we sustain both of 
Moritz’s issues on appeal.  We reverse the trial court’s judgment and 
remand this case for trial.
 
 
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
   
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.
DELIVERED: 
May 20, 2004

NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Wal-Mart Stores, Inc. v. Garza, 27 S.W.3d 64, 67 (Tex. App.—San 
Antonio 2000, pet. denied).
3.  
See Tex. R. Civ. P. 48; Saenz 
v. David & David Constr. Co., Inc., 52 S.W.3d 807, 810 (Tex. 
App.—San Antonio 2001, pet. denied).
4.  
See Tex. Civ. Prac. & Rem. 
Code Ann. §§ 33.001–33.016 (Vernon 1997); Tex. R. Civ. P. 277.
5.  
See Tex. Civ. Prac. & Rem. 
Code Ann. §§ 33.001–33.016; Tex. 
R. Civ. P. 277; see also Parker v. Highland Park, Inc., 565 S.W.2d 
512, 517 (Tex. 1978); Bill’s Dollar Store, Inc. v. Bean, 77 S.W.3d 367, 
370 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); Thompson v. City of 
Corsicana Hous. Auth., 57 S.W.3d 547, 555 (Tex. App.—Waco 2001, no pet.).
6.  
See, e.g., Dow Chem. Co. v. Bright, 89 S.W.3d 602, 606 
(Tex. 2002); Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 
527–28 (Tex. 1997); Garza, 27 S.W.3d at 67.
7.  
See, e.g., Dow Chem. Co., 89 S.W.3d at 606; Olivo, 
952 S.W.2d at 527.
8.  
See, e.g., Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 
1992); Saenz, 52 S.W.3d at 812.
9.  
State v. Williams, 940 S.W.2d 583, 584–85 (Tex. 1996); Keetch, 
845 S.W.2d at 264.
10.  
See Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 324 (Tex. 
1993); Parker, 565 S.W.2d at 515.
11.  
See, e.g., Olivo, 952 S.W.2d at 528–29; Saenz, 52 
S.W.3d at 813.
12.  
Olivo, 952 S.W.2d at 528; Saenz, 52 S.W.3d at 813.
13.  
Tex. R. Civ. P. 166a(c); S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Trico Techs. 
Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997); Harwell v. State Farm 
Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); City of Houston v. 
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
14.  
See Alexander, 868 S.W.2d at 324.
15.  
988 S.W.2d 223, 225 (Tex. 1999).
16.  
Parker, 565 S.W.2d at 517.
17.  
Id.; Bill’s Dollar Store, 77 S.W.3d at 370.
18.  
Tex. R. Civ. P. 166a(c); Grant, 
73 S.W.3d at 215; Montiel, 949 S.W.2d at 310; Harwell, 896 S.W.2d 
at 173; City of Houston, 589 S.W.2d at 678.
19.  
Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001).
20.  
Id.
21.  
Olivo, 952 S.W.2d at 528; Saenz, 52 S.W.3d at 813.
22.  
Koch Refining Co. v. Chapa, 11 S.W.3d 153, 155 (Tex. 1999) (quoting Restatement (Second) of Torts § 414 
(1965)); Lee Lewis Constr., 70 S.W.3d at 783.
23.  
Lee Lewis Constr., 70 S.W.3d at 783.
24.  
Id.
25.  
Tex. R. Civ. P. 166a(c); Grant, 
73 S.W.3d at 215; Montiel, 949 S.W.2d at 310; Harwell, 896 S.W.2d 
at 173; City of Houston, 589 S.W.2d at 678.
26.  
Lawrence v. City of Wichita Falls, 122 S.W.3d 322, 329 (Tex. App.—Fort 
Worth 2003, pet. denied); Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d 
336, 343 (Tex. App.—Austin 2000, pet denied).
27.  
Lawrence, 122 S.W.3d at 329; Reliable Consultants, 25 S.W.3d at 
343.
28.  
Lawrence, 122 S.W.3d at 329; Reliable Consultants, 25 S.W.3d at 
343.
29.  
Tex. R. Civ. P. 166a(c); Grant, 
73 S.W.3d at 215; Montiel, 949 S.W.2d at 310; Harwell, 896 S.W.2d 
at 173; City of Houston, 589 S.W.2d at 678.